IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ROSEMARIE DiVETRO,

                                        Plaintiff,

                vs.                                        Civil Action No.
                                                           5:05-CV-830 (GLS/DEP)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

_____

APPEARANCES:                                   OF COUNSEL:

FOR PLAINTIFF:

LEGAL SERVICES OF                              CHRISTOPHER CADIN, ESQ.
CENTRAL NEW YORK
472 South Salina Street
Suite 300
Syracuse, NY 13202

FOR DEFENDANT:

HON. GLENN T. SUDDABY                          WILLIAM H. PEASE, ESQ.
United States Attorney for the                 Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

OFFICE OF GENERAL COUNSEL                      BARBARA L. SPIVAK, ESQ.
Social Security Administration                 Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278                             KIMBERLY L. SCHIRO, ESQ.
                                               Assistant Regional Counsel

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Rosemarie DiVetro, who suffers from various diagnosed mental and physical conditions including bilateral knee, neck and back pain, as well as depression, has commenced this proceeding pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Commissioner's denial of her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") payments under the Social Security Act.  In her appeal, plaintiff asserts that the determination of the administrative law judge ("ALJ") assigned by the agency to hear and determine the matter, to the effect that she was not disabled at the relevant times, is not supported by substantial evidence in the record and overlooks both contrary opinions of her treating physician and her statements concerning the limitations which she experiences as a result of her conditions.  Plaintiff further maintains that the ALJ erroneously determined that she retains the requisite residual functional capacity ("RFC") to perform available work in the national and regional economies.

Having carefully reviewed the record of evidence and proceedings before the agency, considered in the light of plaintiff's arguments, and

2

applying the requisite deferential review standard, I find that while the Commissioner's determination is in most respects proper, the ALJ's RFC determination, which serves as the lynchpin for his finding of no disability, is not supported by substantial evidence.  Accordingly, I recommend that plaintiff's motion for judgment on the pleadings be granted, and the matter be remanded to the agency for further proceedings.

I.      BACKGROUND

Plaintiff was born in 1952; at the time of the administrative hearing in this matter, she was fifty-three years old.[1]  AT 48, 325.  Plaintiff is not currently married, and lives alone in an apartment in Auburn, New York.  AT 56, 335.  Plaintiff is a high school graduate and has completed two years of college course work.  AT 75, 334.

Plaintiff last worked sometime in 2003.  AT 13, 330.  Prior to that time, DiVetro was employed for approximately thirty-one years in various positions, including as a hairstylist, receptionist, retail sales clerk, and factory production worker.  AT 59, 70, 82, 330, 332.

Over time plaintiff has experienced several injuries, both work-related and otherwise.  Plaintiff has reported, for example, having fallen at

---

[1]      Portions of the administrative transcript, filed by the Commissioner and comprised of a compilation of evidence and proceedings before the agency, Dkt. No. 11, will be cited hereinafter as "AT ___."

a gas station in 1999 or 2000, causing injury to her left knee and resulting in persistent mild pain.[2]  AT 194.  In July 2000, plaintiff was involved in an automobile accident, resulting in injuries to her lower back and left knee. AT 163-71, 184, 247, 265, 289.  Plaintiff also reports having sustained a work-related injury in October of 2000 to her right knee and lower back, AT 165-66, and additionally has registered complaints of back pain, radiating into her thighs and both knees, as well as up into her shoulder and neck, resulting from another fall at work, experienced in December of 2000.[3]  AT 123, 182, 199.

Plaintiff has received treatment for her various physical conditions from multiple sources.  Dr. John Cambareri, an orthopedist, treated plaintiff's lower back and knee conditions between November of 2001 and June 2004.[4]  AT 182-200, 227-49A, 283-91.  During the course of that treatment, plaintiff was diagnosed by Dr. Cambareri as suffering from joint

---

[2]     The report of that incident, which is included in a note of an office visit by the plaintiff on August 6, 2002 with her orthopedic care providers, Syracuse Orthopedic Specialists ("SOS"), is equivocal as to the date of that accident, at one point stating that it occurred in September of 2000, while at another fixing the date in November, 1999.  *See* AT 194.

[3]     Plaintiff was also involved in another motor vehicle accident in January of 2003, resulting in radiating pain into her left side.  AT 154, 174.

[4]     It appears that plaintiff was treated orthopedically at SOS as early as November of 1999; the administrative transcript, however, contains no records from that source extending back to that date.  *See* AT 194.

knee and low back pain, lumbostenosis, and a lumbosacral strain/sprain. AT 185, 198, 200, 229, 232, 235, 238, 284, 286-87, 289, 291.  Plaintiff has also received treatment from Dr. Awayda for several physical conditions, including neck pain.[5]  AT 173-181, 250-53, 304-07, 312-16.

Plaintiff's physical conditions have been treated fairly conservatively over time, including with such medications as Vioxx, Tylenol with Codeine, Advil, Motrin, Lexapro, Aspirin, and Cortizone injections.  *See* AT 111, 124, 128, 135, 261, 316, 341.  Physical therapy has also been recommended, although plaintiff participated in physical therapy for only two months, including June of 2002 and June of 2003.[6]  *See* AT 149, 151-54, 207-13, 215, 217-21.  Surgery for plaintiff's physical condition has not been recommended.  *See* AT 174-200, 227-249A, 250-51, 283-91, 304-07.

In addition to her physical conditions, plaintiff has also sought treatment for mental health issues with the Cayuga County Mental Health Center ("CCMHC"), beginning in December of 2003, complaining of

---

[5]     Dr. Awayda has also treated DiVetro for asthma, a condition which appears to be relatively stable and under control, and which is not pressed by her as a basis to find limitations on her ability to perform work-related functions.  *See* AT 174-75, 250, 305.

[6]     Reports of plaintiff's physical therapy reveals general improvement in her condition resulting from those sessions.  AT 149, 151-54, 207-13, 215, 217-21.

feeling overwhelmed and stressed by a combination of factors, including chronic pain and her economic circumstances.  AT 100-01, 109, 254-59, 293-303.  Professionals at the CCMHC have variously diagnosed the plaintiff as suffering from an adjustment disorder with depressed mood, a depression disorder, a dependent personality disorder, and a borderline personality disorder.  AT 259, 303.

In addition to the records of her treating sources, the administrative transcript contains reports of consultative physical and mental examinations of the plaintiff.  On March 15, 2004 plaintiff was examined by Dr. Kalyani Ganesh, an orthopedic consultant.  AT 265-68.  Based upon his examination of the plaintiff and an account of her daily activities, Dr. Ganesh diagnosed the plaintiff as suffering from chronic lower back pain, neck pain, and bilateral knee pain, opining that as a result of those conditions she does not suffer any significant limitations in sitting, walking, or standing, and is only mildly to moderately limited in her ability to lift, carry, push and pull.  AT 267.

Plaintiff was twice examined by consultants to discern whether she experiences any limitations associated with her mental conditions.  The first of those consultative examinations was conducted on March 15, 2004 by Dennis M. Noia, Ph.D.  AT 260-64.  In a report of that examination Dr.

Noia opined that vocationally, plaintiff appears capable of following, understanding and remembering simple instructions and directions, and to have the capacity to perform simple and some complex tasks with supervision and independently, maintain attention and concentration for tasks, and regularly attend to a routine in maintaining a schedule.  AT 263.  After elaborating on his findings, Dr. Noia diagnosed the plaintiff as suffering from an adjustment disorder with mixed features, and concluded that her condition did not "appear to be significant enough to interfere with [her] ability to function on a daily basis."  *Id.*

Plaintiff was later tested and psychologically evaluated on August 25, 2004 by Thomas A. Lazzaro, Ph.D.  AT 317-20.  Based upon his testing, which revealed intelligence quotient ("IQ") scores placing the plaintiff toward the bottom of the low average range of intellectual functioning, Dr. Lazzaro determined that DiVetro suffers from a learning disability affecting primarily the dominant left verbal hemisphere of her brain, and that as a result her working vocabulary and verbal abstracting skills are deficient.  AT 317-18.  Dr. Lazzaro also detected the presence of emotional difficulties, representing the most significant factor adversely affecting plaintiff's vocational training, but concluded that she has "potentially sufficient psychological resources to cope adequately with the

7

demands imposed on her by internal and external events in her life, [as well as] the adaptive capacity to think logically and coherently, and that she appears capable of attending to her experiences in a reasonably open and flexible manner."  AT 320.

In a follow-up assessment of plaintiff's ability to perform work-related activities, completed on February 16, 2005, Dr. Lazzaro reported that plaintiff experiences short term memory deficits with slight limitations in understanding, remembering, and carrying out short, simple instructions, and moderate limitations in understanding, remembering, and carrying out detailed instructions.  AT 323-24.  In that report, Dr. Lazzaro also noted his view that plaintiff has marked limitations in making simple work-related decisions and judgment, interacting appropriately with the public, responding appropriately to work pressures in a usual work environment, and responding to changes in a routine work setting.  *Id.*

II.   PROCEEDINGS BEFORE THE AGENCY

Plaintiff filed applications for DIB and SSI benefits in or about early

2004, asserting a disability onset date of December 31, 2000.[7,8]  AT 48-
50, 54-56.  Those applications were denied at the initial stage of the
administrative process.  AT 32-41.

A hearing was conducted on February 15, 2005 by ALJ William T.
Vest, Jr. to address plaintiff's claim for benefits.  *See* AT 325-58.   On
March 25, 2005, following the close of the hearing, ALJ Vest issued a
written decision regarding plaintiff's request for DIB and SSI benefits.  AT
12-21.  Based upon his *de novo* review of the record, and applying the
now familiar five part sequential test for determining disability, ALJ Vest
concluded at step one that plaintiff had not engaged in substantial gainful
activity since her alleged disability onset date.  AT 20.  At steps two and
three of the disability algorithm, the ALJ concluded that plaintiff's
degenerative disc disease, adjustment disorder, and learning disorder
were impairments of sufficient severity to significantly restrict her ability to

---

[7]      The record is equivocal concerning the date of filing at plaintiff's benefits
application.  Both the ALJ and the parties affix the date of filing of October 14, 2003.
AT 12; Plaintiff's Memorandum (Dkt. No. 21) at 1; Defendant's Brief (Dkt. No. 16) at 1.
The administrative transcript, however, contains only DIB applications submitted by the
plaintiff on March 28, 2003, AT 48-50, and again on January 20, 2004.  AT 54-56.

[8]      According to her, the plaintiff subsequently re-applied for DIB and SSI
benefits on May 3, 2005 and was found to be disabled and thus entitled to receive
benefits beginning on the day after the agency's determination now under review
became final.  *See* Dkt. No. 21 at p. 1, n. 1.

perform basic work activities, AT 20, but that they did not meet or equal any of the listed, presumptively disabling impairments set forth in the governing regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1.  AT 21.  In his decision, ALJ Vest specifically considered but rejected plaintiff's knee conditions as also qualifying at step two of the disability analysis as being of sufficient severity, noting the lack of significant treatment and empirical evidence demonstrating abnormality.  AT 14.

Before proceeding to step four of the sequential analysis, ALJ Vest next determined that despite the limitations imposed by her medical conditions, plaintiff retains the RFC to perform a significant range of light work, provided that she is not required to climb, work at unprotected heights, or to perform more than simple routine repetitive tasks, and is allowed to alternate sitting and standing as needed.[9]  AT 17-18, 21.  In

---

[9]    By regulation light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work,

making that determination, ALJ Vest relied upon medical evidence in the record, including reports generated by treating and evaluating physicians, and rejected plaintiff's subjective testimony, to the extent that it was inconsistent with that finding, as not being fully credible.  AT 13-21. Applying that RFC finding, assisted by testimony elicited from a vocational expert regarding the demands of that past relevant work, ALJ Vest determined that plaintiff is able to perform in certain of her prior jobs, including as a production assembler, and thus is not disabled.  AT 13-21.

Notwithstanding his past relevant work finding, ALJ Vest went on to consider plaintiff's circumstances as they apply at step five of the relevant inquiry, at which point the burden shifts to the Commissioner to determine the availability of other work within the national and local economies susceptible of being performed by the claimant.  AT 19.  Noting that even if plaintiff retained only the RFC to perform sedentary work, and relying upon the medical vocational guidelines (the "grid") set forth in the applicable regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 2 as a framework, again assisted by testimony from the vocational expert, the

unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

ALJ concluded that there is available work within the national and local economies which plaintiff is capable of performing including, *inter alia,* as a manicurist and an information clerk.  AT 19-20.  ALJ Vest thus found that plaintiff is not disabled and, accordingly, denied her applications for DIB and SSI benefits.  AT 20-21.  ALJ Vest's opinion became a final determination of the agency on April 29, 2005, when the Social Security Administration Appeals Council denied her request for review of that decision.  AT 5-7.

    B.   <u>This Action</u>

Plaintiff commenced this action on July 1, 2005.  Dkt. No. 1.  Issue was thereafter joined on March 14, 2006 by the Commissioner's filing of an answer, accompanied by an administrative transcript of the proceedings and evidence before the agency.  Dkt. Nos. 10, 11.  With the filing of plaintiff's brief on February 28, 2007, Dkt. No. 21, preceded by that on behalf of the Commissioner filed on October 13, 2006, Dkt. No. 16, the case is now ripe for determination and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636 (b)(1)(B) and Northern District of New York Local Rule 72.3(d).[10]  *See also*

---

    [10]    This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998,

Fed. R. Civ. P. 72(b).

III.   DISCUSSION

     A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is limited; that review requires a determination of whether

the correct legal standards were applied, and whether the decision is

supported by substantial evidence.  *Veino v. Barnhart,* 312 F.3d 578, 586

(2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal*

*v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp.

2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen,* 817

F.2d 983, 985 (2d Cir. 1987)).   Where there is reasonable doubt as to

whether the Commissioner applied the proper legal standards, his

decision should not be affirmed even though the ultimate conclusion

reached is arguably supported by substantial evidence.  *Martone*, 70 F.

Supp. 2d at 148.  If, however, the correct legal standards have been

applied and the ALJ's findings are supported by substantial evidence,

---

and subsequently amended and reissued by Chief District Judge Frederick J. Scullin,
Jr., on September 12, 2003.  Under that General Order an action such as this is
considered procedurally, once issue has been joined, as if cross-motions for judgment
on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil
Procedure.

those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S. Ct. 206, 216-17 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427; *Martone*, 70 F. Supp. 2d at 148 (quoting *Richardson*). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 715 S. Ct.

456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42 U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp. 2d at 148 (citing *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health and Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health and Human Servs.,* 705 F.2d 638, 644 (2d Cir. 1983).

     B.     <u>Disability Determination - The Five Step Evaluation Process</u>

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . "  42 U.S.C. § 423(d)(1)(A).   In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).   If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a

severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work.  *Perez*, 77 F.3d at 46.  In deciding

whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

      C.    <u>The Evidence In This Case</u>

          1.    <u>Rejection of Treating Source Assessments</u>

The ALJ's finding of no disability hinges upon his findings regarding the limitations imposed by plaintiff's physical and mental conditions and resulting RFC determination.  In support of her challenge to the Commissioner's determination, plaintiff argues that the ALJ's RFC determination is not properly supported, and that in arriving at his RFC determination ALJ Vest improperly rejected more limiting views of her treating physician, Dr. Cambareri, concerning the limitations imposed by her physical conditions.

Ordinarily, the opinion of a treating physician is entitled to considerable deference, provided that it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.  *Veino*, 312 F.3d at 588; *Barnett*, 13 F. Supp. 2d at 316.[11]  Such opinions are not controlling,

---

      [11]     The regulation which governs treating physicians provides:

          Generally, we give more weight to opinions

however, if contrary to other substantial evidence in the record, including the opinions of other medical experts. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino*, 312 F.3d at 588. Where conflicts arise in the form of contradictory medical evidence, their resolution is properly entrusted to the Commissioner. *Veino*, 312 F.3d at 588.

In deciding what weight, if any, an ALJ should accord to medical opinions, he or she may consider a variety of factors including "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof[.]" *See Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (discussing 20 C.F.R. §§ 404.1527, 416.927). When a treating physician's opinions are repudiated, the ALJ must provide reasons for the rejection. 20 C.F.R. §§ 404.1527(d)(2),

---

> from your treating sources . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

416.927(d)(2).  Failure to apply the appropriate legal standards for considering a treating physician's opinions is a proper basis for reversal and remand, as is the failure to provide reasons for rejection of his or her opinions.  *Johnson*, 817 F.2d at 985-86; *Barnett*, 13 F. Supp. 2d at 316-17.

In his decision, ALJ Vest found that the plaintiff retains the RFC to lift and carry twenty pounds occasionally and ten pounds frequently, and to stand for six hours and sit for eight hours in an eight-hour workday, provided she is allowed to alternate between the two as required, additionally concluding that she should avoid certain other circumstances including climbing, working at unprotected heights, and performing more than simple repetitive job tasks.[12]  AT 17-18.  In arriving at that RFC finding, the ALJ placed significant reliance upon two RFC assessments of state agency consultants, completed on June 18, 2003 and April 1, 2004, AT 201-06, 269-74, as well as an evaluation by consultative examiner Dr. Kalyani Ganesh on March 15, 2004, AT 265-68, rejecting a much more limiting RFC assessment issued by Dr. Cambareri in February 2005.  AT 18-19.  The ALJ further relied for support upon state agency psychologist

---

[12]     The exertional elements of the ALJ's RFC finding generally correspond to the requirements associated with light work.  *See* p. 10, n. 9 *ante*.

Dr. Noia's opinion concerning plaintiff's mental impairment, while eschewing the more substantial limitations discerned by Dr. Thomas Lazzaro.[13]  AT 17-18.

The record now before the court contains two formal assessments by Dr. Cambareri regarding plaintiff's ability to perform work-related functions.  In the first, dated July 11, 2003, Dr. Cambareri noted his opinion that plaintiff is capable of lifting up to ten pounds; can stand for two hours, walk for two hours, and sit for four hours in an eight hour work day; and can stand, walk and sit in combination over the course of for a full eight hour work day.  AT 249-49A.  In that evaluation, Dr. Cambareri noted his view that plaintiff does not suffer from any condition which would preclude her ability to work, and stated that he anticipated she would be released for work on August 1 of that year, though not to her past work. *Id.*

In February of 2005, without explanation or apparent reason for the

---

[13]     It is unclear from plaintiff's brief whether she contends that the opinions of Dr. Lazzaro are entitled to controlling weight as those of a treating physician.  As an examining consultant with no ongoing treatment relationship with the plaintiff, Dr. Lazzaro's opinion is not entitled to controlling weight.  *See* 20 C.F.R. §§ 404.1527(d)(2)(i), (ii) & 416.927(d)(2)(i), (ii); *Yoxall v. Apfel*, No. 3:99-CV-656, 2001 WL 539608, at *15-16 (D. Conn. Mar. 30, 2001) (finding that a one-time examining physician's opinion did not deserve the same weight as given to the treating physician's opinion with a long term relationship but that more weight should be accorded to the one-time examiner over a non-examining consultant).

change, Dr. Cambareri provided a significantly more restrictive assessment, opining at that point that plaintiff was only able to lift less than ten pounds, could stand or walk less than two hours per day, and could sit less than six hours per day, noting additional limitations as well. AT 308-11.  Determining that second assessment to be unsupported, ALJ Vest rejected its findings.  AT 18.

The ALJ's rejection of Dr. Cambareri's assessment garners considerable support from the record, including, the assessments of state agency consultants and objective findings made by Dr. Cambareri and Dr. Awayda.  *See* AT 174-76, 179-81, 183-84, 186, 188, 190, 192, 195, 197-99, 228, 231, 234, 237, 241, 247, 250, 284, 286, 289, 291, 304-06.  Dr. Cambareri's RFC assessment is also at odds with the results of an examination by orthopedic consultant Dr. Ganesh, who found no gross limitation in standing, walking and climbing resulting from plaintiff's physical conditions, and only mild to moderate limitations in her ability to lift, carry, push and pull.  AT 267.

In marked contrast to available clinical evidence, Dr. Cambareri's RFC assessment identifies far greater limitations arising from plaintiff's physical condition than are disclosed anywhere in notes of his examinations of the plaintiff.  Throughout 2003 and 2004, when plaintiff

22

was seen for complaints of low back and knee pain, Dr. Cambareri

reported many normal findings and relatively modest limitations. *See,*

*e.g.,* AT 183-84, 186, 188, 190, 192, 195, 197-99, 228, 231, 234, 237,

247, 284, 286, 289, 291.  The records reflect a fairly conservative course

of treatment for plaintiff's alleged back, knee, and neck pain, without

serious consideration of surgical intervention.  *See* AT 149, 151-54, 207-

13, 215, 217-21.  During the course of his treatment of DiVetro, Dr.

Cambareri found that despite tenderness in her lumbar spine and knees,

straight leg raising was generally negative; motor, sensory, and vascular

exams were normal; there was no instability or effusion of the knees;

plaintiff generally had full range of motion of the knees, her gait was

normal, and she could heel and toe walk.  AT 183-84, 186, 188, 190, 192,

195, 197-99, 228, 231, 234, 237, 241, 247, 284, 286, 289, 291.  These

findings are in stark contrast to Dr. Cambareri's conclusions that plaintiff is

partially and totally disabled.[14]  *See* AT 185, 198, 200, 229, 232, 235, 238-

---

[14]     The record discloses that on many occasions Dr. Cambareri was
evaluating plaintiff's condition in the context of her workers' compensation case. *See*,
*e.g.,* AT 184, 189, 291.  The standards for establishing disability under the Social
Security Act, however, differ significantly from those applicable under various states'
workers' compensation laws.  *Crowe v. Comm'r of Soc. Sec.*, No. 01-CV-1579, 2004
WL 1689758, at *3 (N.D.N.Y. July 20, 2004) (Sharpe, J.) (citing *Gray v. Chater*, 903 F.
Supp. 293, 301 n.8 (N.D.N.Y. 1995) ("Workers' compensation determinators are
directed to the workers' prior employment and measure the ability to perform that
employment rather than using the definition of disability in the Social Security Act.")).
Dr. Cambareri's findings regarding disability and loss of use for workers' compensation

39, 284, 286-87, 289, 291.

The ALJ's rejection of Dr. Cambareri's opinions also draw support from findings of Dr. Awayda.  According to notes from that treating physician, plaintiff was found to have little to no tenderness in her neck, range of motion was essentially normal, her asthma was stable and under control, and her pulmonary embolism condition was much improved.  AT 174-76, 179-81, 250, 304-06.  Reports of x-rays and MRI testing further contradicts the severe limitations described by Dr. Cambareri.  AT 159-60, 166-67, 171, 240-41.

In sum, having carefully considered the evidence in the record I am unable to conclude that the ALJ's rejection of Dr. Cambareri's February, 2005 assessment was either inappropriate or improperly explained.

### 2.   RFC Determination

At the heart of plaintiff's challenge regarding the ALJ's finding of no disability is her contention that the RFC finding of the ALJ's inconsistent with the limitations imposed by both her physical and mental conditions.

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue.  20 C.F.R. §§ 404.1545(a), 416.945(a).  An RFC determination is informed by

---

purposes are therefore of limited value in this setting.

consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis.  *Id.*; *Martone*, 70 F. Supp. 2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess plaintiff's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull.  20 C.F.R. §§ 404.1545(b), 404.1569a, 416.945(b), 416.969a.  Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered.  20 C.F.R. §§ 404.1545(b), 404.1569a, 416.945(b), 416.969a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e).  When making an RFC determination, an ALJ must specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice.  *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris,* 728 F.2d at 587).  An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations.  *Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10 (E.D.N.Y. 1997).

25

The only limitation discerned by the ALJ as stemming from plaintiff's mental impairments concerns her ability to perform anything other than simple, repetitive job tasks.  AT 18.  This finding is at odds with the conclusion of Dr. Lazzaro, an agency consultant who, after evaluating her, opined in an assessment dated February 16, 2005 that plaintiff has slight limitations in understanding, remembering, and carrying out short and simple instructions; moderate limitations in understanding, remembering, and carrying out detailed instructions, and interacting appropriately with supervisors and co-workers; and marked limitations in the ability to make judgments on simple work-related decisions, interact appropriately with the public, and respond appropriately to work pressure in a usual work setting and changes in a routine work setting.  AT 323-24.

Despite these findings of Dr. Lazzaro, I cannot conclude that the ALJ's determination regarding the impact of plaintiff's  mental, non-exertional limitations lacks the support of substantial evidence.  Another examining consultant, Dr. Dennis Noia, who evaluated the plaintiff on March 15, 2004, diagnosed her as suffering from an adjustment disorder with mixed features/depressed mood, but concluded that she is nonetheless capable of following, understanding, and remembering simple instructions and directions, performing simple and some complex tasks

26

with supervision and independently, maintaining attention and concentration for tasks and regularly attending to a routine and maintaining a schedule, making appropriate decisions, learning new tasks, relating to and interacting appropriately with others, and dealing with stress.  AT 260-64.  Dr. Noia further found that plaintiff's psychiatric problems did not "appear to be significant enough to interfere with the claimant's ability to function on a daily basis."  AT 263.

The ALJ's finding also finds support in the opinions of a non-examining physician, Dr. Carlos Gieseken, who in an evaluation dated April 7, 2004 found that plaintiff has moderate limitations in only one out of twenty designated categories of mental functioning – the ability to respond appropriately to changes in the work setting.  AT 275-82.  Dr. Gieseken concluded that plaintiff is not significantly limited in eighteen of the other categories, and that there is no evidence of limitation in her ability to accept instructions and respond appropriately to criticism of supervisors.  *Id.*  Dr. Gieseken also opined that plaintiff had no episodes of deterioration, and that she has only mild restrictions of activities of daily living and difficulties in maintaining social functioning and concentration, persistence, or pace.  AT 280.  Staff from the CCMHC has similarly observed that plaintiff's thought processes are logical, affect is blunted

and sad, mood is depressed and dysthymic, sensorium and cognitive functioning are normal, and judgment and insight are fair.  AT 258, 302.  Even Dr. Lazzaro has noted that plaintiff's affect is appropriate, sensorium is clear, and she has no hallucinations, delusions, or other psychotic process.[15]  AT 317.

Plaintiff also challenges the portion of the ALJ's RFC finding relating to plaintiff's physical limitations.  After surveying the available evidence, ALJ Vest concluded that plaintiff can sit for eight hours in a workday and stand for six hours, provided she is permitted to alternate between sitting and standing as needed.  AT 17-18.  Significantly, however, neither state agency consultant who rendered assessments stated that plaintiff can sit for a full eight hours.  See AT 202, 270.  While Dr. Ganesh opined that plaintiff has no "gross limitation" in her ability to sit, he did not elaborate, nor did he particularly state that she can sit for an entire workday.  AT 267.  Simply stated, the record lacks any assessment from either a treating source or a consultant supporting a finding of plaintiff's ability to sit for eight hours in a given workday.

In arriving at his conclusions regarding available work, the

---

[15]   Dr. Lazzaro's assessment was based on a single, isolated examination – a significant factor to be considered in determining the degree of deference owed to his opinion.  See 20 C.F.R. §§ 404.1527(d), 416.927(d).

vocational expert relied upon a hypothetical question which included, as a

requirement, the ability to sit for eight hours in a workday.  Since this

portion of the ALJ's RFC finding is not well-supported, and appears to

have been essential element of the expert's finding that plaintiff is capable

of working, I recommend that the matter be remanded to the

Commissioner for further consideration of this issue.[16]

### 3.    Plaintiff's Credibility

In arriving at his determination, ALJ Vest discounted plaintiff's

claims regarding her disabling symptomology as not being fully credible

based upon accounts of her daily activities and the medical record.

Plaintiff contends that the ALJ's rejection of her disabling claims was not

supported by substantial evidence.

It is well within the discretion of the Commissioner to evaluate the

---

[16]       Although plaintiff seeks remand solely for the calculation of benefits, such a course of action is not appropriate in this case.  Reversal and remand for the calculation of benefits is warranted only "when there is 'persuasive proof of disability' [in the record] and further development of the record would not serve any purpose." *Steficek v. Barnhart*, 462 F. Supp. 2d 415, 418 (W.D.N.Y. 2006) (quoting *Rosa v. Callahan*, 168 F.3d 72,  83 (2d Cir. 1999)).  Remand for further consideration, on the other hand, is justified when the ALJ has applied an improper legal standard, or further findings and explanations would clarify the ALJ's decision.  *See Rosa,* 168 F.3d at 82-83; *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980); *Steficek*, 462 F. Supp. 2d at 418 (citing *Pratts v. Chater,* 94 F.3d 34, 39 (2d Cir. 1996)).  In this instance, remand is required for the purpose of making further findings and offering additional explanations of the evidence, and not because of a finding that there is persuasive proof of disability in the existing record.

credibility of a plaintiff's complaints and render an independent judgment in light of the medical findings and other evidence.  *See Mimms v. Heckler*, 750 F.2d 180, 185-86 (2d Cir. 1984); Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, *Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*  (S.S.A. 1996).  "Since symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone," all information submitted by a claimant concerning his or her symptoms must be considered.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  The claimant's testimony alone carries independent weight; to require a claimant to fully substantiate his or her symptoms with "medical evidence would be both in abrogation of the regulations and against their stated purpose."  *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 207 (W.D.N.Y. 2005) (citing *Castillo v. Apfel*, No. 98 CIV. 0792, 1999 WL 147748, at *7 (S.D.N.Y. Mar. 18, 1999)).

The regulations proscribe a specific process that the ALJ is to follow in weighing a claimant's testimony.  The ALJ must first establish that there is a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms.  20 C.F.R. §§ 404.1529(b), 416.929(b).  If the ALJ finds such an impairment, he or she next evaluates

the intensity and persistence of the symptoms to determine how the symptoms limit the claimant's functioning.  *Id.* § 416.929(c).

A claimant's testimony is entitled to considerable weight when it is consistent with and supported by objective clinical evidence demonstrating that the claimant has a medical impairment which one could reasonably anticipate would produce such symptoms.  *Barnett v. Apfel*, 13 F. Supp. 2d 312, 316 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a).  If the claimant's testimony concerning the intensity, persistence, or functional limitations is not fully supported by clinical evidence, the ALJ must consider additional factors, including: (1) daily activities; (2) location, duration, frequency, and intensity of any symptoms; (3) precipitating and aggregating factors; (4) type, dosage, effectiveness, and side effects of any medications taken to relieve symptoms; (5) other treatment received; and (6) any other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject a claimant's subjective testimony.  *Martone,* 70 F. Supp. 2d at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  Although

the ALJ is free to accept or reject such testimony, a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." *Williams*, 859 F.2d at 260-61 (citation omitted).  Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review.  42 U.S.C. §405(g); *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).

In this case, the ALJ noted that plaintiff suffers from a documented medical condition which could reasonably be expected to produce some degree of pain comparable to that attributed by her to the condition.  AT 16.  ALJ Vest nonetheless rejected plaintiff's complaints as not being credible, however, finding that they were unsubstantiated by clinical evidence in the record, including reports from her treating physicians as well as the consultative report of Dr. Ganesh, and due to the level of activity performed by her in her daily life.  AT 16-17, 21.  While the basis for the ALJ's rejection in this regard is adequately stated, and appears to draw ample support from substantial evidence in the record, it is not necessary to address this issue in light of my recommendation that the matter be remanded for further consideration.

32

IV.   SUMMARY AND RECOMMENDATION

By all accounts, plaintiff suffers from a documented lower back condition that has caused chronic pain, as well as adjustment disorder with mixed features, a mental impairment of modest proportions.  In determining that plaintiff was not disabled, the ALJ properly rejected the opinions of plaintiff's treating physician, Dr. Cambareri, and her psychologist, Dr. Lazzaro, concerning the limitations presented by her conditions, and in this regard the ALJ's decision is supported by substantial evidence and was properly explained.  Additionally, the ALJ's finding that plaintiff's subjective testimony concerning pain and the exertional limitations experienced by her was not fully credible appears to be well-articulated, and at least facially supported.

Turning to the issue of the RFC determination, however, I find that the ALJ failed to specify how his findings were made in light of the rejection of the opinion of plaintiff's treating physician, Dr. Cambareri, particularly since they do not conform to the conclusions of the state agency consultants upon which the ALJ relied, and literally no medical expert has opined, as the ALJ found, that the plaintiff can sit for a full eight hours in a given workday.  Accordingly, it is hereby

RECOMMENDED that the plaintiff's motion for judgment on the

pleadings be GRANTED, the Commissioner's finding of disability be VACATED, and the matter REMANDED to the agency for further consideration consistent with this recommendation.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of Court within ten (10) days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1) (2006); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

IT IS FURTHER ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      June 13, 2008
            Syracuse, NY